Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510

*Attorney for Plaintiff, others listed below.*

# IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| Meredith Evans, individually and on behalf of a class of all persons and entities similarly situated, | Case No. 2:24-cv-00553-JFM |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| vs. | |
| Grand Canyon Education Inc. | |
| and | |
| John Doe Call Centre Identified As "Education Advisors" | |
| Defendants. | |

**Preliminary Statement**

1.      Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id.*…This private cause of action is a straightforward provision designed to achieve

2

a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.      Plaintiff Meredith Evans brings this action under the TCPA, for contacting the Plaintiff and other individuals, who, like the Plaintiff, were listed on the National Do Not Call Registry.

4.      A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5.      Plaintiff Meredith Evans is an individual.

6.      Defendant Grand Canyon Education Inc. is for-profit educational institution with its campus and headquarters located in Arizona.

7.      Defendant John Doe Call Centre Identified As "Education Advisors" is a call centre, whose true identity and corporate form are unknown at this time, Defendant Grand Canyon hired to exclusively market their services, including to numbers on the National Do Not Call Registry.

**Jurisdiction & Venue**

8.      The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

9.      Venue is proper under 28 U.S.C. § 1391(b)(2) because the calls that were initiated to the Plaintiff and the putative class that are the subject of the litigation were organized and sent from this District and to encourage the purchase of services to be provided in this District. As such, a substantial part of the events giving rise to the claims occurred in this District.

**TCPA Background**

10.      The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations, provide power to consumers to prevent unwanted solicitations, and rein in unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq.*

11.      Relevantly, the TCPA provides private rights of action for three types of telemarketing-related conduct.

12.      § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

13.      In this rulemaking proceeding, the FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods

and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

14.    Pursuant to this statutory mandate, the FCC established a national "do not call" database. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

15.    This regulation is presently codified at 47 CFR 64.1200(c)(1-2).

16.    Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

## **Factual Allegations**

17.    Plaintiff Evans is a "person" as defined by 47 U.S.C. § 153(39).

18.    Plaintiff's telephone number, 812-XXX-XXXX, is on the National Do Not Call Registry and has been registered continuously since 2006.

19.    The Plaintiff's telephone number is used for residential purposes and is not associated with a business.

20.    The Plaintiff's telephone number is assigned to a residential telephone exchange service for consumers, not a telephone exchange service for businesses.

21.    The Plaintiff uses the telephone number for personal, family, and household purposes.

22.    Ms. Evans nonetheless received at least eight telemarketing calls from the Defendants on February 13 and 14, 2024.

23.    The Plaintiff never asked for these calls.

24.    The Plaintiff never did any business with the Defendants.

25.    The Plaintiff received calls from multiple caller IDs beginning with 812 and containing various NPA and NXX codes, which, when all called back, state, "Thank you for calling Education Advisors, an education referral service."

26.    The Plaintiff answered a call on February 14, 2024 from the caller ID 812-200-2767. During that call, the caller stated that they were with an education referral service and were looking to speak with someone regarding purchasing educational opportunities.

27.    When this number is called, like the other numbers from which the Plaintiff received calls, the number states, "Thank you for calling Education Advisors, an education referral service."

28.    On February 14, 2024, the Plaintiff called another one of the caller IDs, 812-363-1588, in an effort to ascertain the nature and source of the calls and heard the same "Thank you for calling Education Advisors" greeting.

29.    The Plaintiff spoke to an agent from "Education Advisors," who informed her that they were calling for "Grand Canyon University" and that someone from "Grand Canyon University" would call the Plaintiff shortly.

30.    Based on these representations, it was evident to Plaintiff, as to any recipient of the calls Plaintiff received, that Education Advisors was simply acting as an agent for Grand Canyon and not actually assisting in selecting a school as a legitimate guidance counselor would, for instance.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

31.     Similarly, it is evident that Grand Canyon directed that the calls Education Advisors placed would have such a result that anybody that called in would be eventually "referred" to Grand Canyon, in essence providing the illusion of choice.

32.     True to the agent's word, the Plaintiff received a call that same day from an agent with Grand Canyon University. To be clear, the Plaintiff does not sue for or claim that such call violated the TCPA at this time.

33.     However, this call shows that Grand Canyon ratified Education Advisors' conduct by accepting the lead and referral generated by Education Advisors as a result of its illegal telemarketing conduct.

34.     Thereafter, counsel for the Plaintiff attempted to contact Grand Canyon University to ascertain why she received such illegal calls, whether such calls were placed with consent, and the source of the calls.

35.     In response, Stephanie Pearlman, a paralegal in Defendant Grand Canyon's legal department, responded that Plaintiff provided her consent during the call, provided a recording of the call, and admitted that it hired Education Advisors to place the calls and obtain requisite consent.

36.     This declaration against interest further demonstrates that Education Advisors was acting as Grand Canyon's agent by any one of the three commonly accepted theories of agency, including a blatant admission of actual authority.

37.     Moreover, the providing of a recording of the call further demonstrates agency because it shows that Grand Canyon had access to Education Advisors' systems and could review call recordings at will. Of course, a review of those recordings would

show and disclose to Grand Canyon the illegal nature of Education Advisor's calling conduct.

38.     Ms. Pearlman is flat wrong with respect to the consent issue, however. The TCPA requires prior consent to place a call; a telemarketer cannot retroactively obtain consent during an illegal prerecorded call. To hold otherwise would be the equivalent of throwing a rock through someone's window with a note stating that unless the recipient throws the rock back outside the window within some time frame, they consented to having a rock thrown through their window.

39.     When counsel for Plaintiff inquired as to who Education Advisors was, Ms. Pearlman stated, "It is not our practice or policy to provide our vendor's contact information to third parties. Moreover, we do not see a rationale for providing that information in this instance."

40.     From this response, it is a logical inference that Grand Canyon continues to accept leads from Education Advisors and in fact actually shields Education Advisors from this litigation, demonstrating ratification.

41.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

42.     In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

43.     The FCC has instructed that sellers such as Grand Canyon may not avoid

liability by outsourcing telemarketing to third parties, such as Education Advisors:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing
> activities to unsupervised third parties would leave consumers in many cases
> without an effective remedy for telemarketing intrusions. This would particularly
> be so if the telemarketers were judgment proof, unidentifiable, or located outside
> the United States, as is often the case. Even where third-party telemarketers are
> identifiable, solvent, and amenable to judgment, limiting liability to the
> telemarketer that physically places the call would make enforcement in many
> cases substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately in order
> to obtain effective relief. As the FTC noted, because "sellers may have thousands
> of 'independent' marketers, suing one or a few of them is unlikely to make a
> substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned up).

44.    In 2013, the FCC held that a corporation or other entity that contracts out
its telephone marketing "may be held vicariously liable under federal common law
principles of agency for violations of either section 227(b) or section 227(c) that are
committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

45.    Grand Canyon is liable for telemarketing calls placed by Education
Advisors and transferred to Grand Canyon to generate customers for Grand Canyon,
including the Plaintiff.

46.    Grand Canyon was interested in hiring a lead generator that could make
phone calls to potential customers, vet potential clients, and only sell them the interested
ones.

47.    Indeed, it was interested in hiring a lead generator that could purportedly
"advise" potential customers to choose Grand Canyon.

48.     To do so, it hired Education Advisors to orchestrate an *en masse* telemarketing campaign.

49.     Grand Canyon controlled the day-to-day activities of Education Advisors by providing the specific criteria for the leads it would accept and required its vendors, including Education Advisors, to adhere to those criteria.

50.     For instance, Grand Canyon directed Education Advisors to pretend like they were giving educational advice and a referral, but simply requiring them to recommend and refer clients to Grand Canyon provided they met Grand Canyon's criteria.

51.     Grand Canyon authorized Education Advisors to use the Grand Canyon trade name and trademarks, authorized Education Advisors representatives to state that they were going to receive calls from Grand Canyon and inform potentially interested persons that the calls were for Grand Canyon.

52.     Furthermore, Grand Canyon requested that Education Advisors record every call, provide the ability to access such recording to Grand Cayon on demand, and obtain consent on Grand Canyon's behalf to receive future follow up calls directly from Grand Canyon.

53.     Grand Canyon would not compensate Education Advisors for a call it made unless the leads it purchased met the criteria set by Grand Canyon, including calls made subject to Grand Canyon's audit, including by demanding and listening to call recordings.

54.     As such, Grand Canyon controlled the content of Education Advisors'
telemarketing and took steps to ensure it retained such control, such as by demanding the
retention of and production of call recordings.

55.     Finally, Grand Canyon could have terminated Education Advisors once it
learned of Education Advisors' illegal marketing conduct.

56.     It did not.

57.     In fact, Grand Canyon took steps to *shield* Education Advisors from
liability and this lawsuit and *continues* to refuse to disclose their identity, even previously
moving to dismiss on the basis of a purported lack of agency relationship while shielding
and refusing to disclose the identity of the agent.

58.     In this regard, Grand Canyon is a habitual offender.

59.     Just five months ago, the FTC sued Grand Canyon for "deceptive
advertising and illegal telemarketing." The FTC's press release on the matter describes a
scheme shockingly similar to the one Plaintiff experienced, including the use of illegal
lead generators to do its dirty work and insulate it from liability:

> The defendants also used abusive telemarketing calls to try to boost enrollment at
> GCU, according to the complaint. GCE advertised on websites and social media
> urging prospective students to submit their contact information on digital forms.
> GCE telemarketers then used the information to illegally contact people who have
> specifically requested not to be called, as well as people on the National Do Not
> Call Registry. GCE has also made illegal calls to numbers it purchased from lead
> generators.

*FTC Sues Grand Canyon University for Deceptive Advertising and Illegal Telemarketing*,
FTC (Dec. 27, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/12/ftc-

sues-grand-canyon-university-deceptive-advertising-illegal-

telemarketing?utm_source=govdelivery.

60.     Indeed, with full knowledge of the FTC investigation and lawsuit, it

doubled down and put complete trust in their third-party lead generator Education

Advisors and directed them to handle all the illegal calling on its behalf and only transfer

them customers that met criteria set by Grand Canyon and then double down again by

hiding Education Advisors' identity.

61.     A reasonable seller, let alone one being sued by the FTC, would investigate

what telemarketers it has making calls are making calls to numbers on the Do Not Call

List. They would not continue such misconduct by continuing to use such marketers and

rely on them for scrubbing, registration, and regulatory compliance.

62.     Moreover, a reasonable seller, let alone one being sued by the FTC, would

also investigate into the reasons why their marketer would be calling numbers on the

National Do Not Call Registry as an initial matter.

63.     Indeed, Grand Canyon could have investigated if the transfers it received

were on the National Do Not Call Registry, whether the leads purchased were legitimate

and were called with the consent required to make calls to numbers on the National Do

Not Call Registry.

64.     It did not.

65.     Grand Canyon hired Education Advisors without a proper investigation and

did not terminate them when they were informed of Education Advisors' illegal calling conduct. In fact, they refused to identify the true identity of Education Advisors such as to shield Education Advisors from an investigation or from liability and continue to do so.

66.     As such, they knowingly ratified Education Advisors' conduct.

67.     Grand Canyon accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to him.

68.     The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

69.     Plaintiff's privacy has been violated by the above-described telemarketing calls.

70.     Plaintiff never provided her consent or requested the calls.

71.     The calls were all unwanted, nonconsensual encounters.

72.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed

13

and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## Class Action Statement

73.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

74.    Plaintiff brings this action on behalf of herself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

75.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

National Do Not Call Registry Class: All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendants or a third party acting on Defendants' behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

76.    Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the Class members.

77.    Plaintiff and all members of the Class have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste

of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

78.     Members of the Class as defined above, are identifiable through Defendants' dialer records, other phone records, and phone number databases.

79.     Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

80.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

81.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

82.     There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

83.     There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including, but not limited to, the following:

a.     Whether Defendants made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

b.     Whether Defendants' conduct constitutes a violation of the TCPA;

c.     Whether Defendants are vicariously liable for any calls placed by telemarketing vendors, if any; and

d.     Whether members of the Class are entitled to treble damages

15

based on the willfulness of Defendants' conduct.

84.     Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.

85.     Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents.

86.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

87.     Excluded from the Class are counsel, Defendants, and any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

88.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the
National Do Not Call Registry Class)**

89.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

90.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

91.     Defendants' violations were negligent, willful, or knowing.

92.     As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

93.     Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.      Injunctive relief prohibiting Defendants from calling telephone numbers advertising its goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B.      That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

C.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing a Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D.      Such other relief as the Court deems just and proper.

**JURY DEMAND**

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated:  May 7, 2024

Respectfully Submitted,
*/s/ Anthony Paronich*
Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510
*Subject to Pro Hac Vice*

Case 2:24-cv-00553-JFM   Document 18   Filed 05/07/24   Page 19 of 19