Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510

*Attorney for Plaintiff, others listed below.*

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| Meredith Evans, individually and on behalf of a class of all persons and entities similarly situated, | CV-24-00553-PHX-GMS |
| Plaintiff, | |
| vs. | **OPPOSITION TO GRAND CANYON EDUCATION INC.'S MOTION TO DISMISS** |
| Grand Canyon Education Inc. | |
| and | |
| John Doe Call Centre Identified As "Education Advisors" | |
| Defendants. | |

## <u>INTRODUCTION</u>

Plaintiff Meredith Evans ("Plaintiff" or "Ms. Evans") took the affirmative step of registering her telephone number on the National Do Not Call Registry, which is designed to prevent the receipt of unwanted telemarketing calls. Despite her registration, the defendant John Doe Call Centre Identified as "Education Advisors" ("Doe" or "Education Advisors") placed a series of automated telemarketing calls to her telephone number without her consent. On the call that the Plaintiff fully engaged the telemarketer, Ms. Evans was offered the services of Grand Canyon Education Inc. ("Defendant" or "Grand Canyon"). Grand Canyon – and *only* Grand Canyon, followed up on that investigative call and continued to pitch its educational services to Ms. Evans. So, Ms. Evans sued Grand Canyon. Nothing about that is surprising and hardly stands as a basis for dismissal.

Nevertheless, Grand Canyon has moved to dismiss claiming that Ms. Evans has not sufficiently alleged Grand Canyon's vicarious liability for the calls it hired Doe to place. However, without the aid of any discovery, Ms. Evans has alleged that Grand Canyon has authorized Doe's telemarketing activity and provided them with the authority and right to bind Grand Canyon in contract with their telemarketing. The Court should likewise reject its tactic of improperly marshaling extrinsic evidence to cast doubt on the Plaintiff's allegations. The Court should therefore deny Grand Canyon's motion in total based on the well-pled factual allegations in the Plaintiff's complaint and disregard the recording improperly submitted before this Court.

## BACKGROUND AND PLAINTIFF'S ALLEGATIONS

"Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

Here, the Plaintiff alleges that Doe, a telemarketer retained by Grand Canyon to market Grand Canyon's services, contacted her and others through the use of multiple telemarketing calls to her number and others on the National Do Not Call Registry in plain violation of the TCPA. *See* ECF No. 18, Amended Complaint ("Am. Compl.") ¶ 25. The Plaintiff's telephone number has been on the National Do Not Call Registry and despite that Ms. Evans received multiple calls from Doe calling on behalf of Grand Canyon throughout February of 2024. *Id.* ¶ 22, 23. And Defendant Grand Canyon hired Doe to place the calls, *despite being slapped with an FTC lawsuit* for the same exact

conduct at issue here, hiring lead generators to call people on the National Do Not Call Registry. *Id.* ¶ 59.

During the investigative call that the Plaintiff conducted, the Plaintiff spoke with an agent from "Education Advisors" who informed her that they were calling for "Grand Canyon University" and that someone from "Grand Canyon University" would call the Plaintiff shortly. *Id.* ¶ 29. And true to *that* representation, an individual from Grand Canyon, and *only* Grand Canyon, called the Plaintiff to further solicit her for educational services. *Id.* ¶ 32.

The Defendant now plays a smoke-and-mirrors game to cast doubt on the Plaintiff's well pled factual allegations in her complaint directly linking Grand Canyon to the calls. It does so by denying it directed Doe's conduct, despite the fact that it hired and directed Education Advisors to act simply as a front and a sham for "recommending" Grand Canyon, and told them to use other "distractor" names of universities on the calls to provide the illusion of choice. Significantly, Grand Canyon ignores its own employee's declaration against interest that Grand Canyon "hired Education Advisors to place the calls and obtain requisite consent," *Id.* ¶ 35, demonstrating agency.

In sum, the Plaintiff has more than adequately pled Grand Canyon's vicarious liability for Education Advisors' conduct such as to subject it to vicarious liability under any one of the three generally accepted agency liability theories of actual authority, apparent authority, and ratification. This case should unquestionably proceed to discovery to ascertain Education Advisors' true identity and their precise agency involvement in the calls at issue here placed for Defendant.

## **LEGAL STANDARD**

To survive a motion to dismiss, a complaint must contain sufficient facts which, if accepted as true, state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is plausible where the plaintiff pleads factual content that would allow a court to draw the reasonable inference that defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Of critical importance here, a motion to dismiss under Rule 12(b)(6) must be decided based on the well-pled factual allegations within the four corners of the Plaintiff's complaint and the Court may not consider extrinsic evidence without converting the motion to one for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

## **ARGUMENT**

**A. This Court may not consider the recordings and transcript attached to the motion without converting it into one for summary judgment. Regardless, even if true, mentioning multiple principals on the call does not disprove the existence of an agency relationship.**

As a preliminary matter, the Plaintiff would be remiss if she did not point out that the Defendant attempts to improperly rely on extrinsic evidence it claims supports its motion to dismiss in the form of a purported recording of the investigative phone call as well as a transcript of the same. However, on a motion to dismiss, the Court is limited to the four corners of the Plaintiff's complaint and may not consider the extrinsic evidence attached thereto, such as the recording of the investigative call and the transcript attached as Exhibits B and C, without converting the motion to one for summary judgement. *Lee*,

250 F.3d at 688. As the Ninth Circuit explained in *Lee*, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Id.* The *express* text of Rule 12(d) provides that, when, as here, "matters outside the pleadings are presented to and not excluded by the court, the motion *must* be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d) (emphasis added).

The Ninth Circuit in *Lee* addressed two exceptions to that general rule, but none of the two exceptions are met here. *Id.* The first is if the extrinsic evidence asks the Court to take judicial notice of matters of public record. *Id.* The recording is clearly is not a matter of public record. Second, the court may consider "material which is properly submitted as part of the complaint." *Id.* Here, the Plaintiff did not submit the purported recording or a transcript of the same as part of the Complaint. The Plaintiff does not rely on this disputed evidence, which is plagued with maladies. The purported recording is inadmissible because it is unauthenticated, because it is hearsay, and its authenticity *is* contested here.

The recording is inadmissible because it is unauthenticated and its authenticity is contested. The recording attached lacks any certificate of authenticity, chain of custody, certification of any sort from any custodian of records, or any indication as to where the recording originated. *Id*; *Ericson v. City of Phoenix*, No. CV-14-01942-PHX-JAT, 2016 WL 6522805, at *7 (D. Ariz. Nov. 3, 2016) ("[U]nauthenticated documents cannot be considered in ruling on a motion for summary judgment because authentication is a condition precedent to admissibility."). The Dickerson declaration does not authenticate the recording either because it does not rely on his personal knowledge of the

*circumstances of the recording itself*; it simply rehashes the bill of goods that Grand Canyon sold him. It does not identify, as a custodian of records would, the source of the recording, how it was obtained, from whom it was obtained or anything else to lay the foundation for the admissibility of this recording. *Cf. Greer v. City of Hayward*, 229 F. Supp. 3d 1091, 1094 n.3 (N.D. Cal. 2017) (holding unauthenticated police videos were hearsay).

The unauthenticated and inauthentic recording is also hearsay. The statements in the recording are offered as assertions, that is, to prove that Grand Canyon did not direct the call and was therefore not vicariously liable for them. The recording is offered for the truth of the matters asserted therein, namely, for the purported truth of what happened on the investigative call and the purported assertion that other entities were named on the call. Like in *Lee*, hearsay statements like this recording are the exact sort of inadmissible, extrinsic statements that require the Court to either reject their inclusion or convert the motion into summary judgment. Thus, the Court must either (a) refuse to consider the additional evidence, in which case the motion must be denied based on the well-pled allegations in her complaint or else (b) convert the motion to one for summary judgment and provide for additional discovery and briefing as required by Rule 12(d), in which case the motion must still fail because it relies on inadmissible evidence in contravention of Rule 56. *Ericson*, 2016 WL 6522805, at *7.

In any event, even if this Court were to consider Grand Canyon's argument, presented without supporting evidence and entirely speculatively, that the inclusion of other universities' names on the calls made by Education Advisors absolves them of

liability on a vicarious liability theory, that argument is fundamentally flawed, because it is a fundamental principal of agency that an agent can serve two masters and that both such masters may be jointly and severally liable for the agent's actions. Indeed, as the Tenth Circuit has held in another case involving advertising misconduct performed by a single agent on behalf of two principals, "[T]hat certain affiliates may have worked for another advertiser at the same time that they were working for Lens.com does not necessarily mean that they could not have been agents of Lens.com. An agent can serve multiple principals at once, even principals that are competing with one another." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1250 (10th Cir. 2013) (citing cases).

In any event, the Plaintiff has sufficiently alleged that the entire "education advisors" strategy was a strategic sham designed to create an illusion of choice for prospective students. Am. Compl. ¶ 31. This tactic does not diminish Grand Canyon's responsibility but rather underscores a deliberate attempt to manipulate the decision-making process of the call recipients. The complaint outlines how Doe used the illusion of choice and advising to create a façade of comparison, making the Defendant's university appear as a more attractive option amidst supposedly prestigious alternatives. *Id.* ¶ 31, 33, 50. This deceptive practice, which Plaintiff alleges was orchestrated by Grand Canyon itself, clearly falls within the realm of vicarious liability, as it was intended to benefit Grand Canyon by increasing its appeal to potential students. *Id.* ¶ 50.

Moreover, the Plaintiff's allegations demonstrate that Grand Canyon directed Doe to leverage other potential education options to enhance its own perceived value. The complaint effectively argues that Grand Canyon benefitted from this deceptive marketing

technique, thereby ratifying the actions of Education Advisors. *Id.* ¶ 50. By knowingly allowing its name to be used in such a manner, the Defendant implicitly endorsed the calls and accepted the benefits derived from this manipulation.

In any event, *Jones v. Royal Admin. Servs.*, 887 F.3d 443 (9th Cir. 2018), which was decided based on a full record at summary judgment, does not stand for the proposition that there can be no vicarious liability when a call centre places calls on behalf of multiple companies. There, unlike here, and after discovery on the basis of a full factual record, the Ninth Circuit held that the telemarketer must *first* pitch a Defendant's product in order for that Defendant to be liable for calls based on a vicarious liability theory. *Id.* at 451. *Jones* does not stand for the proposition, as Defendant claims, that mentioning more than one principal forecloses agency on the part of either. That argument runs contrary to well-established agency law. *See Lens.com*, 722 F.3d at 1250.

The mention of other names on the calls, even if true, does not automatically exclude or rule out Grand Canyon's vicarious liability for Education Advisors' conduct. At best, it *might* prove joint and several liability on the part of multiple principals, including Grand Canyon, to be explored in discovery and for a jury to apportion at trial. *Id.* And in any event, Grand Canyon was the only named entity that the Plaintiff received a call from, and Grand Canyon was unquestionably mentioned on the calls, since Education Advisors tried to pitch Grand Canyon education. And no part of *Jones* required that the pitch for a specific company be made on a later call. *Id.* at 453. All *Jones* requires is that the principal, or its products and services, be *mentioned* on the call, just like here, such as to trace the call to the principal and not some other principal or third party. *Id.*

9

As will be explained in greater detail below, these well-pled allegations, which remain true and legally sufficient regardless of the factual issue of whether or not additional names were or were not mentioned on the calls, further establish that Defendant ratified the calls and Education Advisors' conduct. They are sufficient to nudge the Plaintiff's vicarious liability theory from the realm of possibility to plausibility. In fact, the Ninth Circuit held as much in *Royal* when remarking about two-phased calls presenting choices in a holding that supports the Plaintiff here:

> When telemarketers reached a consumer, they first had to sell the consumer on the idea of a VSC. Royal did not have control over this sales pitch. Only after the consumer was sold on the idea of a VSC, would an AAAP telemarketer pitch a specific VSC. If this specific VSC was a Royal VSC, then Royal controlled the "scripts and materials" the telemarketer was permitted to use in the sale. An AAAP telemarketer pitched a VSC to Appellants during only one call at issue in this case. During that call, a telemarketer attempted to sell a "Diamond New Car" protection plan—a plan not sold by Royal through AAAP. Thus, there is no evidence that AAAP telemarketers ever tried to sell Royal VSCs to Appellants.

*Id.* at 451. Identical conduct occurred here. First, the "education advisor" tried to sell Plaintiff on the idea of an education. After that occurred, the "advisor" pitched a *Grand Canyon* education plan. Thus, Grand Canyon unquestionably can be said to have controlled the "scripts and materials the telemarketer was permitted to use." Unlike in *Royal*, where there was "no evidence" that the "AAAP telemarketer ever tried to sell Royal," here, there is smoking gun evidence that the Education Advisors telemarketer tried to sell Grand Canyon education, as further confirmed by Grand Canyon's, and only Grand Canyon's, own calls based on the aforementioned conduct.

The complaint provides a detailed account of how the Defendant benefitted from the calls, which were designed to attract students through the aforementioned deceptive

comparisons and illusion of advisory choice. The Defendant's acceptance of these benefits, including by being the *only* university that ended up calling the Plaintiff to sell the Plaintiff its educational services, coupled with the lack of any corrective measures, signifies ratification of Education Advisors' actions in crisply opposite facts to *Royal*. This ratification is evident through the Defendant's continued relationship with Education Advisors, the sustained utilization of the misleading marketing strategy, and the attempted weaponization of this marketing strategy as against the Plaintiff.

### B.  The Plaintiff Sufficiently Alleges Grand Canyon's Vicarious Liability for the Calls.

"[A] party may be liable under the TCPA in accordance with tort-related vicarious liability rules," including actual authority, apparent authority, and ratification principles. *Klein v. Just Energy Grp., Inc.*, No. 14-1050, 2016 U.S. Dist. LEXIS 84447, at *27 (W.D. Pa. June 29, 2016) (citing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016)); *see also In re Dish Network*, 28 F.C.C. Rcd. 6574, 6588 (F.C.C. 2013). "The existence of an agency relationship is a mixed question of law and fact that should generally be decided by a jury." *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, No. 14-CV-8467 (JMF), 2016 U.S. Dist. LEXIS 133299, at *33 (S.D.N.Y. Sep. 28, 2016) (internal quotation marks omitted); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 660 (4th Cir. 2019) (affirming TCPA vicarious liability jury verdict).

An agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to

act." Restatement (Third) of Agency § 1.01 (2006); *see also Krakauer*, 925 F.3d at 659-660 (stating the same and citing the Restatement). "Once such a relationship is formed, 'traditional vicarious liability rules ordinarily make principals . . . vicariously liable for acts of their agents . . . in the scope of their authority.'" *Id.* at 660 (quoting *Meyer v. Holley*, 537 U.S. 280, 285-86, 123 S. Ct. 824, 154 L. Ed. 2d 753 (2003)). "An essential element of agency is the principal's right to control the agent's actions", but this concept of control "embraces a wide spectrum of meanings", including "what the agent shall and shall not do, in specific or general terms." Restatement (Third) of Agency § 1.01 cmt f. "A principal's control over an agent will as a practical matter be incomplete because no agent is an automaton who mindlessly but perfectly executes commands." *Id.*

A plaintiff is required to allege a sufficient basis for any "one of the common law agency theories." *Cunningham v. Cap. Advance Sols., LLC*, No. 17-13050 (FLW), 2018 U.S. Dist. LEXIS 197590, at *17-21 (D.N.J. Nov. 20, 2018). "[A] plaintiff is not required to plead all of its evidence in the complaint in order to plausibly allege agency." *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016) (citing *Dish Network*). A plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451, at *2 (N.D. Ill. Sep. 7, 2016).

For TCPA claims specifically, there is a low bar to pleading vicarious liability, as a plaintiff is *not expected* to allege "facts suggesting that" the defendant: (1) "instructed" the putative agent "to make the call to" the plaintiff, (2) "had any authority over the time,

means and manner of" the putative agent's solicitations, or (3) "had the ability to issue instructions … on these subjects." *Dolemba*, 213 F. Supp. 3d at 997 ("But Farmers does not suggest how Dolemba could reasonably be expected to know those facts at this stage in the litigation. Indeed, it is likely that all of the documents and information that establish (or refute) the details of the agency relationship between Farmers and the Lombardi Agency are exclusively within the Defendants' custody and control."); *see Cunningham v. Rapid Response Monit. Servs.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017) ("Cunningham has investigated the parties extensively, but inevitably some aspects of their relationships will only come to light in discovery."); *cf. Jones v. Royal Admin. Servs.*, 887 F.3d 443 (9th Cir. 2018) (cited by Grand Canyon and decided based on a full record at summary judgment).

In this respect, the Defendant's heavy reliance on this Court's unreported decision in *Winters v. Quicken Loans Inc*, is misplaced on both the facts, which were far less detailed than here, and the law, which paid no heed to *Dolemba* and its progeny. Ultimately, in this case, Plaintiff pleads robust facts giving rise to an inference that Grand Canyon is vicariously liable for Doe's calls to Plaintiff calls based on all three vicarious liability theories.

### A.   Actual Authority

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01. Actual authority may be given expressly—such as

when the principal states "in very specific or detailed language" how an agent is to act—
or impliedly—such as when an agent acts "in a manner in which [the] agent believes the
principal wishes the agent to act based on the agent's reasonable interpretation of the
principal's manifestation in light of the principal's objectives and other facts known to
the agent." *Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 U.S. Dist.
LEXIS 128877, at *16 (M.D.N.C. July 22, 2020) (denying motion to dismiss in TCPA
vicarious liability case); *see Cunningham*, 251 F. Supp. 3d at 1199 ("The question of
whether implied authority may have existed would require the Court to know more about
the course of the parties' dealings and the generally expected course of business ….").

Actual agency "does not require the principal to specify the singular acts for which
her or her authority exists as long as the acts are incidental to or reasonably necessary to
accomplish what is authorized." *Harrington v. Roundpoint Mortg. Servicing Corp.*, 2017
U.S. Dist. LEXIS 55023, at *21 (M.D. Fla. Apr. 10, 2017). "The concept of scope of
authority is broad. An agent has authority to act to further the principal's objectives, as
the agent reasonably understands the principal's manifestations and objectives. The
principal is liable for the acts of the agent to further the principal's purposes unless the
agent acts entirely for the agent's benefit only." *United States v. Dish Network LLC*, 256
F. Supp. 3d 810, 923 (C.D. Ill. 2017) (citing Restatement (Third) of Agency § 2.02(1)).

Thus, for a TCPA claim, a plaintiff sufficiently pleads that a defendant actual
directed an agent's calls by alleging facts giving rise to an *inference* that the defendant
was "involved" in the "sales practices and marketing procedures." *United States*, 256 F.

Supp. at 922-923; *Dolemba*, 213 F. Supp. 3d at 997 ("Of course, these facts may not be sufficient to prove any theory of vicarious liability. They are more than sufficient, however, to entitle Dolemba to further discovery.").

Perplexingly, this Court in *Winters* held otherwise, faulting the plaintiff there from making "conclusory" allegations as to the existence of actual authority based on a purported contract between the Defendant and the third-party telemarketing company. It faulted the plaintiff for omitting "key terms of the contract necessary to establish control," despite not being required to have that information available to plaintiff at the motion to dismiss stage. *Winters v. Quicken Loans Inc.*, No. CV-20-00112-PHX-MTL, 2021 WL 5040323, at *4 (D. Ariz. Oct. 29, 2021). Simply put, *Winters* was wrong on the law in this regard, as explained below and contradicted by numerous sister courts.

Even so, here, unlike in *Winters*, Plaintiff alleges, based on facts known to her, indicia of specific contractual provisions and other elements that prove that Grand Canyon is liable for Doe's conduct at issue here, including:

- Contractually requiring a disclosure that Grand Canyon would call them based on the lead and establish consent to do so, thereby also demonstrating ability to bind Grand Canyon in contract, a hallmark of actual authority. Am. Compl. ¶ 51.
- Grand Canyon contractually required that Doe record every call and that it have the ability to access any recording for calls and purported evidence of consent for calls placed by Doe on its behalf and have such evidence immediately available to it. *Id.* ¶ 52, 54.
- Grand Canyon masterminded the aforementioned vetting strategy of using the "advisors" façade to give the illusion of choice while retaining control over what leads Doe was selling it. *Id.* ¶ 46, 47, 49, 50.
- Grand Canyon also gave interim instructions to Doe by providing it the criteria for the leads it would purchase. *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Grand Canyon actively shielded, and continues to shield, the identity of Doe "Education Advisors," presumably because of some contractual or other provision prohibiting disclosure. *Id.* ¶ 47.
- Grand Canyon had the ability to prohibit calls to numbers on the Do Not Call list and should have done so but did not. *Id.* ¶ 61–64.

Plaintiff sufficiently alleges Grand Canyon's vicarious liability under actual authority by alleging that Grand Canyon contracted with the telemarketer that made the calls to make calls, by telling the telemarketer what candidates to call, and failing to prevent calling numbers on the Do Not Call list. These facts demonstrate the requisite control over the telemarketer to permit discovery on their relationship. Unlike in *Winters*, the Plaintiff here does not merely conclusorily "make up" contractual provisions as the Defendant unjustly claims. Rather, without the benefit of seeing the contract–an insurmountable hurdle–the Plaintiff nevertheless alleges a good faith inference as to the aforementioned contractual provisions demonstrating agency.

Notably, another district court *after Winters* recently denied a substantively similar motion to dismiss based on failure to allege vicarious liability in a case involving similar (if not less substantive) allegations of actual agency as here in a *published* opinion. On November 7, 2022, the District of Maryland denied a substantially similar motion to dismiss in *Jones v. Mutal of Omaha Ins. Co.,* 639 F. Supp. 3d 537, 550–53 (D. Md. 2022) (cleaned up) holding:

> At this juncture, Mutual of Omaha's Motion turns on whether plaintiff has adequately alleged facts sufficient to support a claim of vicarious liability. . . . In the TCPA context, courts characterize the control necessary to establish agency as "whether the principal controlled or had the right to control [the agent] and, more specifically, the manner and means of the [telecommunications] campaign they conducted." Generally, the existence and scope of agency relationships are factual

16

matters, and are "therefore often appropriately left to the jury." *Krakauer*, 925 F.3d at 660 (quoting *Metco Prods., Inc., Div. of Case Mfg. Co. v. NLRB*, 884 F.2d 156, 159 (4th Cir. 1989)).

Plaintiff has made a prima facie showing of an agency relationship based on actual authority. Her Amended Complaint provides specific allegations regarding Mutual of Omaha's ability to control the third party's telemarketing methods. In particular, Jones alleges that Mutual of Omaha had control over the manner and means of the third party's telemarketing methods by (1) having the ability to prohibit the use of prerecorded technology to generate customers but failing to do so, and (2) providing instructions regarding the volume of calls and the states in which those calls could be made. Moreover, Jones alleges that Mutual of Omaha "explicitly informed the third party it could make calls into Maryland[.]" These allegations are similar to those made in other TCPA cases in this Court. *See Hossfeld v. GEICO*, 88 F. Supp. 3d 504, 507 (D. Md. 2015) ("Plaintiffs allege that in order to accept telemarking call transfers, sellers must tell their telemarketers and lead generators the speed and volume of calls so that its operators do not become overwhelmed.") (internal citations omitted).

Additionally, just as in *Hossfeld*, plaintiff has alleged that she received calls from an unidentified third-party telemarketer hired to sell branded products of another company who had control over the telemarketer's practices with respect to selling its products. Specifically, Jones alleges that the third party "was required to promote Mutual of Omaha's products[.]" Plaintiff also alleges that during the "solicitation", Mutual of Omaha's insurance services "were promoted." . . .

That Mutual of Omaha cites some cases in which a vicarious liability claim under the TCPA survived a motion to dismiss based on somewhat more detailed allegations does not persuade the Court that Jones's suit is subject to dismissal for failure to plead an identical level of detail. *See Hossfeld*, 88 F. Supp. 3d at 510 n.12 ("Plaintiffs need not plead the identity of every player in the alleged scheme nor every nuance of the relationships; indeed, the information necessary to connect all the players is likely in [GEICO's] sole possession.") (quoting *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014)). At the motion to dismiss stage, plaintiff need only make a prima facie showing of an agency relationship. Therefore, at this stage of the proceedings, Jones need not demonstrate that Mutual of Omaha actually controlled the manner and means of the telemarketing campaign; rather, evidence of Mutual of Omaha's *right* to control the campaign will suffice.

The Plaintiff has sufficiently alleged agency under an actual authority theory.  Ms.

17

1   Evans makes specific, direct allegations, as outlined above, about the nature of the

2   relationship, including making inferences as to contractual provisions based on actual

3   experiences and evidence. There can be no question that Grand Canyon consented to Doe

4   being allowed to make telemarketing contacts on its behalf *en masse*, as to be further

5   explored in discovery.

6   **B. Apparent Authority**

7   Apparent authority "arises when a third-party reasonably believes that the [] agent

8   had authority to act on behalf of the principal and that belief can be traced to the

9   principal's own manifestations." *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F.

10  Supp. 2d 1141, 1167–68 (D. Idaho 2011). Apparent authority can exist even where a

11  principal does not communicate directly with a consumer. *See Hayhurst*, 2020 U.S. Dist.

12  LEXIS 128877, at *24-25 ("Although Keller Williams is not alleged to have made any

13  statements directly to Hayhurst, it is not required to do so. Rather, its manifestations must

14  be 'traceable' to it even if it did not make them directly to Hayhurst. And, its

15  manifestations 'may take many forms'.").

16  Here, Plaintiff sufficiently pleads Grand Canyon's vicarious liability predicated on

17  apparent authority and ratification theories based on the same allegations supporting an

18  actual authority theory. *See* Am. Compl. ¶ 35–68. Specifically, with regard to *apparent*

19  authority, it is and was reasonable for Plaintiff to believe that Grand Canyon authorized

20  Doe to make the prerecorded calls on its behalf because, though the calls presented the

21  illusion of choice, the caller stated that Grand Canyon would call the Plaintiff. Only

22  Grand Canyon called the Plaintiff as a result of the illegal calls. And Grand Canyon

18

apparently has substantial clout over Doe. It evidently has the ability to obtain alleged recordings and purported evidence of consent on demand. It is likely precluded, contractually or otherwise, from identifying "Education Advisors." And it did nothing when faced with an FTC lawsuit and this one with respect to their conduct.

In fact, as a result of these manifestations traceable to Grand Canyon as well as those made by Paralegal Pearlman, Plaintiff had no reason to know that anyone other than Grand Canyon was involved in the calls (perhaps using the trade name "Education Advisors") until Grand Canyon began spinning its story of "Education Advisors'" purported involvement, purported consent, purported recordings of the investigative call, and stating that it was not their "practice or policy to provide [Doe's] contact information to third parties." Am. Compl. ¶ 35–39. Moreover, this conduct by Grand Canyon's *own employees* begs the question as to what about the Plaintiff's "instance" and this lawsuit resulted in Grand Canyon not "see[ing] a rationale for providing that information." *See Hayhurst*, 2020 U.S. Dist. LEXIS 128877, at *24-25 ("Although Keller Williams is not alleged to have made any statements directly to Hayhurst, it is not required to do so. Rather, its manifestations must be 'traceable' to it even if it did not make them directly to Hayhurst. And, its manifestations 'may take many forms'.").

The importance of paralegal Stephanie Pearlman's statements to proving apparent authority in this case cannot be understated. The Defendant eschews actual argument on this point and *completely* fails to address *why its own employees* made manifestations *against Grand Canyon's own interest* in all but *admitting* that Education Advisors was its agent, that it *hired Education Advisors to place the calls* and that it authorized Education

Advisors to act on its behalf, including by recording calls and obtaining purported consent. Am. Compl. ¶ 35 (describing response of Pearlman who "admitted that it hired Education Advisors to place the calls and obtain requisite consent.").

The consent issue is especially damning for the Defendant's claims that it did not manifest apparent authority because under the TCPA, consent must be obtained in the name of the *specific seller*—i.e., the company (like Grand Canyon) whose product is being sold. *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 at ¶33 (2012). It follows that if Education Advisors is obtaining purported consent for Grand Canyon to contact the Plaintiff, Education Advisors is acting as Grand Canyon's agent by any measure of apparent authority. If Doe were not acting as an agent, it would not be obtaining any legally cognizable valid consent under the TCPA.

As a result, Plaintiff sufficiently alleges Grand Canyon's vicarious liability based on apparent authority based on manifestations traceable to and benefits derived directly by Grand Canyon, including in the course of Plaintiff's later investigation.

### C. Ratification

"Ratification occurs when a principal knowingly chooses to accept the benefits of unauthorized actions an agent takes on the principal's behalf." *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 833 (N.D. Ill. 2016); Restatement (Third) of Agency § 4.01(1) (2006) cmt. d. ("Ratification does not require a pre-existing formal agency relationship."). "[R]atification may create a relationship of agency when none existed between the actor and the ratifier at the time of the act. It is necessary that the actor have acted or purported to act on behalf of the ratifier." Restatement (Third) of

Agency § 4.01 cmt. b; *see Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019) (citing the Restatement and holding in a TCPA action that "ratification may create an agency relationship when none existed before the acts are 'done by an actor … who is not an agent but pretends to be.'"). To demonstrate prospective ratification, a plaintiff must show that a principal had full knowledge of all the facts, *or* was willfully ignorant of those facts, and manifested an intention to ratify the act in question, *or* that an agent acted for a principal's benefit and the principal "fail[ed] to object or repudiate an action." *Henderson*, 918 F.3d at 1074-75; *Aranda*, 179 F. Supp. 3d at 831.

Similarly, with regard to ratification, Grand Canyon knowingly accepted the benefits of the illegal calls made to numbers on the National Do Not Call Registry it knew it hired Doe to make *and obtain purported consent for*. It was directly involved in the calls by getting *exactly* what was intended from the calls—the opportunity for Grand Canyon (and not anybody else) to have its services promoted to potential new customers, like the Plaintiff. It did so despite knowing of Doe's illegal conduct and despite being under active litigation from the FTC arising out of the *very same conduct* on which vicarious liability is alleged: using agents like Doe to place illegal calls to numbers on the Do Not Call Registry and then ratifying that conduct by downright refusing to terminate such vendors and in fact continuing to use them.

The fact that Plaintiff did not in fact agree to receive and pay for Grand Canyon's offered services does not change the fact that it benefitted in precisely the way it intended from its arrangement with Doe, *i.e.*, it obtained a potential lead. *See, e.g.*, *Aranda v. Caribbean Cruise Line, Inc.*, 179 F.Supp. 3d 817, 833 (N.D. Ill. 2016) (sellers ratified

telemarketers' conduct by accepting the benefits of the unlawful calls in TCPA case);

*Keim v. ADF Midatlantic, LLC,* 2015 WL 11713593, at *8 (S.D. Fl. 2015) (allegations

sufficient to state a claim where seller accepted the benefits of the conduct by having text

messages sent on its behalf to phone numbers obtained on its behalf); *Abante Rooter &*

*Plumbing, Inc. v. Alarm.com, Inc.*, 2018 U.S. Dist. LEXIS 132078, (N.D. Cal. 2018) (a

reasonable jury could find defendant liable on ratification theory where "Alarm.com

knew of Alliance's allegedly illegal telemarketing conduct and accepted the benefits

therefrom").

  Regardless, there is no need for Grand Canyon to receive a benefit from a specific

call or set of calls to Plaintiff, or based on what was said on the calls. To be sure, it

received and retained such benefits, while at the same time being sued by the FTC for the

very same conduct. The *Restatement* and case law makes clear that a party ratifies an

entire *course of conduct*, like an entire calling campaign, and not just a specific act, like a

single call. *See* Restatement ch. 4, intro. note (a principal who retains benefits of an

agent's action "must also become subject to the legal consequences of *the totality of the*

*agent's conduct*") (emphasis added); *id.* § 4.01 cmt. d ("if the [principal] is aware of

*ongoing conduct encompassing numerous acts* by the [caller], failure to terminate may

constitute ratification"); *id.* § 4.07 cmt. c ("interrelated components of economic activity

among the same parties may . . . constitute a single transaction for purposes of this rule").

  In *Henderson*, for example, our very own Ninth Circuit held "a reasonable jury

could find that USA Funds ratified the debt collectors' *calling practices* by remaining

silent and continuing to accept the benefits"—notwithstanding the fact that there was no

evidence plaintiff made any loan payments as a result of the calls. *Henderson*, 918 F.3d at 1075 (it accepted "the benefits—*loan payments*—of the collectors' calls"); *Henderson v. United Student Aid Funds, Inc.*, 2017 U.S. Dist. LEXIS 28165 (S.D. Cal. Feb. 27, 2017); *Aranda*, 179 F. Supp. 3d at 833 (holding "[a] reasonable jury could conclude . . . Berkley . . . knew that ESG was placing unlawful calls to gin up business for them and accepted the benefits from *this campaign*").

Likewise, in *Abante,* the court held it was "not persuaded by Alarm.com's assertion that because plaintiffs have not presented evidence any of the named plaintiffs or class members actually purchased an Alarm.com security system from Alliance or its agents, Alarm.com did not benefit from Alliance's conduct." 2018 U.S. Dist. LEXIS 132078 at *14, n. 4. The court found evidence Alarm.com received substantial revenue from the marketing campaign as a whole was sufficient for ratification. *Id.*

So too here. Grand Canyon has unquestionably ratified Doe's conduct by engaging Doe to call people on the Do Not Call Registry in violation of the TCPA and despite being in active litigation with the FTC regarding the very same conduct: using lead generators to call people on the DNC. Despite Defendant's manufactured deficiency about the Plaintiff failing to prove ratification based on this conduct, it is blind to the obvious: Grand Canyon could *easily* have verified *itself* that it was not calling numbers on the Do Not Call Registry by using the Registry for the purpose for which it was designed–to search for numbers on the Registry and then *refrain from calling them*. But Grand Canyon called Plaintiff anyway, either because it did not check if the Plaintiff's number was on the Registry or because it did not care. And purported consent is

irrelevant to this conclusion, because if Grand Canyon believed it had consent naming it as a *specific seller*, it would implicitly have to have authorized Education Advisors to collect consent naming Grand Canyon on its behalf, thus demonstrating apparent, if not actual, authority. In any event, it also could have independently verified the purported consent but elected not to, demonstrating willful blindness to the issue.

Defendant then doubled down in its ratification of Doe's conduct and continues to do so again and again by refusing to identify Doe's true identity or why they are illegally using the fictitious business name "Education Advisors" without any proper registration. It does so even now after being called out about it multiple times. This conduct begs the question: if Doe was not acting as Defendant's agent, why is Defendant so intent on shielding Doe's very identity, not to mention the nature of their relationship with Doe? As a result, Plaintiff sufficiently alleges Grand Canyon's vicarious liability based on a ratification theory based on manifestations traceable to and benefits derived directly by Grand Canyon both from the call to Plaintiff and the calling campaign as a whole.

## CONCLUSION

For the foregoing reasons, the motion to dismiss must be DENIED.

Dated:  June 10, 2024

Respectfully Submitted,

*/s/ Anthony Paronich*
Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510
*Pro Hac Vice*